## Case No. 3,985.

DONALDSON et al. v. McDOWELL et al.

[Holmes, 290.][1]

Circuit Court, D. Massachusetts. Dec., 1873.[2]

### DEMURRAGE—BILL OF LADING.

The ship has a privilege against the cargo for damages in the nature of demurrage, enforceable in the admiralty, when the cargo has not been received within a reasonable time, through fault of the consignee, although the bill of lading contains no demurrage clause.

[Cited in Sheppard v. Philadelphia Butchers' Ice Co., Case No. 12,757; Irzo v. Perkins, 10 Fed. 781; Hawgood v. 1,310 Tons of Coal, 21 Fed. 686; The William Marshall, 29 Fed. 329.]

Admiralty appeal from a decree of the district court [of the United States for the district of Massachusetts].

The claimants [Walter Donaldson and others] shipped at Elizabethport, N. J., on the brig Hyperion, a cargo of coal, owned by them, and to be delivered to them as consignees at Phillips' wharf in Salem, Mass. The bill of lading contained no demurrage clause. The brig arrived at Salem July 26, and on the same

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 6,987.]

day the master notified the consignees' agent, at Phillips' wharf, of his arrival and readiness to discharge, and demanded a berth. Another notice was given to the consignees in person, July 28. No berth was furnished till Aug. 2, when the brig began to discharge. The discharge continued at a very slow rate, owing to the negligence and delay of the consignees, (the coal being removed from the wharf as soon as discharged), until Aug. 6, when the cargo was libelled for freight and demurrage. On the 10th it was released, and discharge was completed on the 12th. In the district court a decree was entered for the libellants [James E. McDowell and others (Case No. 6,987)], and the claimants appealed.

Joseph Nickerson, for appellants.
F. L. Hayes, for libellants.

SHEPLEY, Circuit Judge. This appeal from the decree of the district court in admiralty presents the question, whether the ship has a privilege against the cargo for damage, in the nature of demurrage, when the cargo has not been received within a reasonable time, through the fault of the consignee. The consignees in this case, although not nominally in the bill of lading, yet, in fact, were the shippers of the cargo. Appellants contend that as the bill of lading contains no express contract concerning demurrage, the law will not imply one against the consignee.

When the bill of lading contains no provision for the payment of demurrage, courts of common law have generally held that the consignee, or his assignee, is not liable for demurrage, even after receipt of the goods. Smith v. Sieveking, 5 El. & Bl. 589; Young v. Moeller, Id. 755; Gage v. Morse, 12 Allen, 410. But when the bill of lading has contained a stipulation for demurrage, either expressly or by reference to the charter-party, the acceptance of the goods has been held to be evidence of an agreement by the consignee to pay demurrage as well as freight. Chief Justice Mansfield said, in Jesson v. Solly, 4 Taunt. 52, "If the consignee will take the goods, he adopts the contract." The reason given in the cases first cited is, that as the consignee is not a party to the contract in the bill of lading, and is only liable upon the contract, which may be implied upon the actual delivery of the cargo and waiver of his lien by the master, he is not bound to accept the cargo at any particular time, and incurs no responsibility by a refusal or delay in accepting it; and that the contract implied from its acceptance can extend no further than the conditions upon which its delivery is made dependent by the bill of lading. This enables the consignee unreasonably to refuse or delay to receive the goods when the master tenders delivery, and thus subject the ship to expense and delay; while the consignee may subsequently claim

the goods on payment of the stipulated freight, and receive them without any liability to pay the damages occasioned by his own neglect or refusal. The reasoning in these cases is not very satisfactory, and the result is to exempt the consignee from liability to an action at law for the consequences of his own neglect. Since the decisions in the English courts relied upon in support of this doctrine, the English bills of lading act, 18 & 19 Vict. c. 111, § 1, provides that "Every consignee of goods named in a bill of lading, and every indorsee of a bill of lading to whom the property of the goods therein mentioned shall pass, upon and by reason of such consignment or indorsement, shall have transferred to and vested in him all rights of suit, and be subject to the same liabilities in respect of such goods as if the contract contained in the bill of lading had been made with himself." Under this statute the assignee who receives the cargo has all the rights and bears all the liabilities of a contracting party. See Smurthwaite v. Wilkins, 11 C. B. (N. S.) 842. Independent of the bills of lading act, the English and American courts have held, that, where the consignee is the freighter, he is held liable to the vessel for any unnecessary detention in loading or unloading, although no express contract is made on the subject. Sprague v. West [Case No. 13,255]; Holt, Shipp. pt. 3, c. 1, § 25.

In Horn v. Bensusan, 9 Car. & P. 709, it was admitted that the ship-owner, on a special count in the declaration for not loading or unloading in a reasonable time, could recover damages for detention of the ship against the consignee. In the case before the court, it clearly appears that the title of the coal was in the claimants, and that they were in fact the freighters of the coal. The master testifies that he received his order for the coal from the claimants in New York; that he delivered that order to the Scranton Coal Company, and they gave him orders to take to Elizabethport, to the Scranton coal dock. Upon this state of facts, the consignees being also the shippers of the cargo, I see no reason why the ship-owner could not recover, by a libel in personam, against the consignee, demurrage occasioned by his neglect in the unlivery of cargo. Under such circumstances, in the case of Crerar v. Montreal Ocean Steamship Co. [Case No. 3,385], Judge Fox awarded damages for demurrage of the ship, occasioned by the delay of the defendants as consignees to take delivery seasonably of a cargo of coal which the ship-owner was ready and offered to deliver; and the decision was affirmed on appeal to the circuit court by Mr. Justice Clifford.

Whatever the personal liability of the consignee, simply as consignee receiving the cargo, may be in a court of common law, there can be no reasonable doubt of the liability of the cargo in a proceeding in rem in the admiralty for demurrage, when the delay is occasioned by the freighters of that cargo, or the consignees who receive that cargo. Demurrage is only an extended freight or reward to the vessel, in compensation for the earnings she is improperly caused to lose. Every improper detention of a vessel may be considered a demurrage, and compensation under that name be obtained for it. 2 Hagg. Adm. 317. It is a maxim of the general maritime law, that the ship is bound to the merchandise, and the merchandise to the ship. Valin, Comm. bk. 3, tit. 1, art. 11; Id. tit. 3, art. 24; Pard. Droit Com. arts. 709, 961. The law-merchant considers that the master contracts rather with the merchandise than the shipper, and it necessarily follows from this, that the merchandise is liable for whatever the shipper is liable. As in this country courts of admiralty have frequently exercised their jurisdiction to enforce the privilege where the cargo has been libelled for freight, general average, and other charges, there seems to be no just ground for making an exception, and refusing a remedy for a violation of duty and right in the case of demurrage, which, under circumstances like those in the present case, is as much a charge or damage which the master may lawfully demand, and for which he has a privilege against the cargo, as the freight itself, of which demurrage is only an extension.

Decree of district court affirmed, with interest and costs.